APR 2 3 2004

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THOMAS BURNETT, SR., et al.,  )
)
    Plaintiffs,  )    Case Number 03 CV 9849 (RCC)
)    (Consolidated in 03 MD 1570 (RCC))
v.  )    CASE NUMBER  1:04MS00203
)
AL BARAKA INVESTMENT &  )    JUDGE: Reggie B. Walton
DEVELOPMENT CORP., et al.,  )
)    DECK TYPE: Miscellanous
    Defendants.  )
)    DATE STAMP: 04/23/2004

## EMERGENCY MOTION OF THE UNITED STATES
## TO QUASH DEPOSITION OF SIBEL EDMONDS, OR FOR PROTECTIVE ORDER

The United States moves on an emergency basis to prevent the upcoming deposition of

Sibel Edmonds, currently scheduled for Tuesday, April 27 at 10:00 a.m. The grounds for the

government's motion are that the information sought by the deposition subpoena is protected by

the state secrets privilege, a privilege already asserted and under review in the context of another

case. In order to protect the state secrets privilege, the government respectfully requests that this

Court rule prior to the deposition date of April 27. In the alternative, in the event that the Court

requires more time to consider the motion or further explication of the government's assertion of

the state secrets privilege, we request that the Court issue an order staying the deposition until

such time as the Court can satisfy itself of such concerns. In the event the Court is inclined to

deny this motion for any reason, the government requests that the Court issue a protective order

postponing the deposition for a period sufficient to permit the Government to consider seeking

emergency relief in the Court of Appeals. The grounds for this motion are set forth in the

Statement of Interest of the United States of America In Support of Emergency Motion To Quash

Deposition of Sibel Edmonds, or for Protective Order, submitted herewith.



1

Dated: April 23, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

ROSCOE C. HOWARD, JR.
United States Attorney

SUSAN K. RUDY
VESPER MEI
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
(202) 514-3367 (telephone)
(202) 616-8470 (fax)

Counsel for the United States

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THOMAS BURNETT, SR., et al.,   )
      )
      Plaintiffs,   )   Case Number 03 CV 9849 (RCC)
      )   (Consolidated in 03 MD 1570 (RCC))
      v.   )   Southern District of New York
      )
AL BARAKA INVESTMENT &   )   Miscellaneous number _____
DEVELOPMENT CORP., et al.,   )
      )
      Defendants.   )
_____)

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA
## IN SUPPORT OF EMERGENCY MOTION
## TO QUASH DEPOSITION OF SIBEL EDMONDS, OR FOR PROTECTIVE ORDER

The United States of America ("United States" or "Government") files this Statement of

Interest to attend to its interests in this action, pursuant to 28 U.S.C. § 517.[1]

### INTRODUCTION

The United States moves on an emergency basis to prevent the upcoming deposition of

Sibel Edmonds, currently scheduled for Tuesday, April 27 at 10:00 a.m. The grounds for the

government's motion are that the information sought by the deposition subpoena is protected by

the state secrets privilege, a privilege already asserted and under review in the context of another

case. In order to protect the state secrets privilege, the government respectfully requests that this

Court rule prior to the deposition date of April 27. In the alternative, in the event that the Court

requires more time to consider this motion or further explication of the government's assertion of

the privilege, the government requests that the Court enter an immediate stay of the deposition

---

[1] 28 U.S.C. § 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

until the Court has had sufficient opportunity to fully consider the matter. In the event that this

Court is not inclined to grant this motion, however, the government requests that the Court issue

a protective order postponing the deposition for a period sufficient to permit the Government to

consider seeking emergency relief in the Court of Appeals.

As the attached subpoena makes clear, see Attachment A to subpoena, attached as Exhibit

1, each topic on which Ms. Edmonds' testimony is sought will directly implicate the nature of her

duties with the FBI and information that she learned there, all of which is protected by the

assertion of the state secrets privilege in Sibel Edmonds v. United States Department of Justice,

et al., No. 02-CV-1448 (RBW) ("employment case"). In that case, the government has moved to

dismiss the entire case on the grounds that it cannot be litigated as a result of the assertion of the

state secrets privilege over information at the heart of that case. The information over which the

state secrets privilege has been asserted is information that would be disclosed by Ms. Edmonds'

testimony here, and is information for which the disclosure, or risk of inadvertent disclosure,

would cause serious damage to the national security and foreign policy interests of the United

States.[2]

The United States also notes that the subpoena is objectionable because Fed. R. Civ. P. 45

does not apply to the federal government, or to government employees or contractors subpoenaed

to provide information gained in their official capacities, in situations where the government is

not a party. The government, as a non-party, is not a "person" within the meaning of the Rule.

Cf. In re Al Fayed, 229 F.3d 272, 275-76 (D.C. Cir. 2000) (the Federal Government is not a

---

[2] Because all of the testimony that plaintiffs seek from Ms. Edmonds was obtained by Ms. Edmonds through her official duties with the FBI, all of that information remains the property of the agency. See, e.g., Basic Ordering Agreement, Ex. 2, at 31.

"person" under 28 U.S.C. § 1781, notwithstanding the reference in that statute to the Federal

Rules of Civil Procedure); Linder v. Calero-Portocarrerro, 251 F.3d 178, 180-81 (D.C. Cir. 2001)

(reserving the question of whether the word "person" in Fed. R. Civ. P. 45 includes the Federal

Government).

## STATEMENT

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii), the United States files this

emergency motion to quash the subpoena for the deposition of Sibel Edmonds currently

scheduled for April 27, 2004 at 10:00 a.m. in Burnett et al. v. Al Baraka Investment and

Development Corp., et al., 03-CV-9849 (RCC) (consolidated in 03 MD 1570 (RCC) (United

States District Court for the Southern District of New York), on the ground that it would require

the "disclosure of privileged or other protected matter and no exception or waiver applies." See

Attachment A to Subpoena, Exhibit 1, attached hereto.  On April 20, counsel for the United

States wrote to counsel for plaintiffs and Ms. Edmonds' attorney, requesting that they withdraw

the subpoena.  April 20, 2004 Letter to Robert T. Haefele, attached as Exhibit 3.  On April 22,

counsel for the United States also left a voicemail message with Mr. Haefele, seeking that

plaintiffs agree to postpone the deposition until this Court has an opportunity to resolve the issue.

To date, there has been no response.

From shortly after September 11, 2001, until March 2002, Sibel Edmonds performed

translation services for the FBI as a contract linguist.  Edmonds v. FBI, 272 F. Supp. 2d 35

(D.D.C. 2003).  Plaintiffs have subpoenaed Ms. Edmonds to testify with respect to information

that she learned during the course of that work with the FBI.

Between December 2001, and March 2002, Ms. Edmonds contends that she made a

-3-

number of reports to FBI management of alleged misconduct within the FBI's translator program. Edmonds v. FBI, 272 F. Supp. 2d at 42. She further contends that FBI supervisors and managers failed to address her allegations and retaliated against her for reporting her concerns, culminating in the termination of her contract in March 2002. Id.

Ms. Edmonds filed two cases in this Court as a result of the termination of her contract with the FBI: S.D. Edmonds v. FBI, No. 02-CV-1294 (ESH) ("FOIA case"), and Sibel Edmonds v. United States Department of Justice, et al., No. 02-CV-1448 (RBW) ("employment case"). Ms. Edmonds' employment case, Sibel Edmonds v. United States Department of Justice, et al., No. 02-CV-1448 (RBW), alleges violations of the Privacy Act, 5 U.S.C. § 552a, the Administrative Procedures Act ("APA"), and her First and Fifth Amendment rights under the United States Constitution, based on her work as a contract linguist with the FBI, performing translation services from September 2001 until March 22, 2002. See Edmonds v. FBI, 272 F. Supp. 2d at 42. On October 18, 2002, the Attorney General formally asserted the state secrets privilege over certain information at issue in that case. As a result, the government moved to dismiss Ms. Edmonds' complaint on the grounds that the case could not be litigated without disclosure, or the risk of inadvertent disclosure, of material protected by that privilege. That motion is fully briefed and remains pending before Judge Walton.

In the FOIA case, consistent with the assertion of the state secrets privilege, the FBI withheld many documents and portions of documents under FOIA Exemption 1, which protects documents that are: (1) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order. See 5 U.S.C. § 552 (b)(1). In that case, Judge Huvelle

-4-

determined, inter alia, that the FBI had properly invoked Exemption 1 over documents containing

information that would unquestionably be contained within the scope of Ms. Edmonds testimony

as set forth in Attachment A to the Deposition Subpoena.  See Edmonds v. FBI, 272 F. Supp. 2d

35, 42 (D.D.C. 2003).  Ms. Edmonds has appealed the outcome of that case.

On April 13, 2004, Ms. Edmonds was subpoenaed for a deposition in the above-

captioned case.  See Exhibit 1.  As Attachment A to the subpoena makes clear, the deposition

seeks information obtained solely through Ms. Edmonds' work at the FBI, information that Ms.

Edmonds is not authorized to disclose, and information that cannot be discussed without

disclosing classified information and information protected by the state secrets privilege.

Accordingly, the United States files this emergency motion to quash the subpoena for Ms.

Edmonds' deposition, or for protective order staying the matter pending consideration of appeal,

or staying the deposition until the Court has had sufficient opportunity to fully consider the

matter.

**ARGUMENT**

**I.     THE SUBPOENA FOR MS. EDMONDS' DEPOSITION SHOULD BE QUASHED.**

Federal Rule of Civil Procedure  45(c)(3)(A)(iii) provides that a court "shall" quash a

subpoena if it "requires disclosure of privileged or other protected matter and no exception or

waiver applies."  That is precisely the case here, where the testimony sought from Ms. Edmonds

would require disclosure of the exact same information covered by the state secrets privilege

assertion in Ms. Edmonds' employment case.

The very nature of Ms. Edmonds' duties as a contract linguist with the FBI was, and

remains, classified, and subject to the state secrets privilege, and cannot be further disclosed in

-5-

this submission.  See Declaration of David M. Hardy ("Hardy Decl."), ¶ 24; Declaration of John

Ashcroft, ¶ 5.[3]  It is clear from the deposition subpoena that the testimony sought from Ms.

Edmonds will directly implicate that privileged information.  See Attachment A, Ex. 1.  Just a

sample of the proposed topics from the subpoena demonstrate this.  For example, the subpoena

calls for:

> 3.      Statements that Ms. Edmonds made, . . . that Ms. Edmonds read
>         intelligence reports from the Summer of 2001 that reported that al-Qaeda
>         operatives planned to fly hijacked airplanes into United States skyscrapers.
>
> 4.      Statements that Ms. Edmonds made, . . . that "There was general information
>         about the time-frame, about methods to be used but not specifically about how
>         they would be used and about people being in place and who was ordering these
>         sorts of terror attacks." . . .
>
> 6.      Statements that Ms. Edmonds made, . . . in response to national security advisor
>         Condoleezza Rice's Op-Ed piece wherein Dr. Rice stated that the United States
>         had no intelligence warnings of al Qaeda's tactics, and Ms. Edmonds responded
>         "That is impossible" and "That's an outrageous lie.  And documents can prove it's
>         a lie."
>
> 7.      Statements that Ms. Edmonds made . . . that the FBI had detailed information well
>         before September 11, 2001, that a terrorist attack involving airplanes was being
>         plotted and terrorists were likely to attack the United States with airplanes. . . .
>
> 13.     Statements that Ms. Edmonds made . . . regarding alleged FBI security lapses in
>         hiring and monitoring translators, investigators compromised by incorrect or

---

[3] The Declaration of David M. Hardy, the Section Chief of the Record/Information
Dissemination Section of FBIHQ's Records Management Division, was originally filed in Ms.
Edmonds FOIA case, and is attached to this Motion as Exhibit 4.  The Declaration of John
Ashcroft, the Attorney General of the United States, was originally filed in Ms. Edmonds'
employment case, and is attached as Exhibit 5.  Mr. Hardy's unclassified declaration is supported
by his ex parte, in camera supplemental classified declaration.  The Attorney General's
unclassified declaration is also supported by his ex parte, in camera classified Declaration, and
another ex parte, in camera classified Declaration by Bruce Gebhardt, the Deputy Director of the
Federal Bureau of Investigation.  The classified declarations of David M. Hardy, the Attorney
General, and Bruce Gebhardt are currently stored in a proper secure location by the Department
of Justice and would be available for review, on request by the Court.

> misleading translations sent to field agents, and thousands of pages of translations falsely labeled "not pertinent" by Middle Eastern linguists who were either not qualified in the target language or English or protecting targets of investigations.

Id. All of these examples – and the rest of the proposed deposition topics as well – seek information that Ms. Edmonds learned through her work for the FBI. Even laying the foundation for how she learned of any of the issues outlined in the subpoena would involve disclosing such information as the nature of both Ms. Edmonds' job and that of others with whom she worked, and the details of their activities. Delving further into these topics would entail identifying other individuals with whom she worked, explaining both her and their roles and responsibilities, probing into their actions, and attempting to determine what occurred in the context of a classified government activity. All of this would directly disclose the very information over which the state secrets privilege has been asserted, and which Judge Huvelle subsequently found to have been properly classified and required to be kept secret in the interest of national defense or foreign policy.

### A. The Testimony Sought from Ms. Edmonds Is "Privileged or Other Protected Matter" Under Fed. R. Civ. P. 45.

On October 18, 2002, the Attorney General asserted the state secrets privilege over certain information at issue in Ms. Edmonds' employment case.[4] The result of this assertion of the state secrets privilege, if deemed properly asserted by the Court after limited review, is to remove all privileged information from the litigation. Because the scope of the information covered by the privilege is broad, and covers the very nature of Ms. Edmonds' duties with the

---

[4] The Attorney General's assertion of the state secrets privilege is pending with the Government's motion to dismiss in Ms. Edmonds' employment case. That assertion of privilege should be recognized here.

FBI, it is clear that Ms. Edmonds' deposition cannot proceed, because of the danger of the risk of disclosure or inadvertent disclosure of information covered by the privilege.

### 1.    The State Secrets Privilege is an Absolute Privilege.

The existence of a privilege for military and state secrets to protect information vital to the nation's security or diplomatic relations "is well established in the law of evidence." United States v. Reynolds, 345 U.S. 1, 6-7, 73 S.Ct. 528, 531 (1953).    In Reynolds, the Supreme Court held that the Executive Branch may invoke an absolute evidentiary privilege encompassing secrets of state whose disclosure would harm the national security.    The military and state secrets privilege was developed in the common law to protect information vital to the nation's security or diplomatic relations. Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 399 (D.C. Cir. 1984) ("Northrop"); Reynolds, 345 U.S. at 7 n. 11, 73 S.Ct. at 531 n. 11. Accord In re Under Seal, 945 F.2d 1285, 1287 n.2 (4th Cir. 1991) ("The common law recognizes a privilege for military and state secrets the disclosure of which would compromise public interest.")

The state secrets privilege is an absolute privilege that "renders the information unavailable regardless of the other party's need in furtherance of the action." In re Under Seal, 945 F.2d at 1287 n.2; see also Reynolds, 345 U.S. at 11, 73 S.Ct. at 533 ("even the most compelling necessity cannot overcome the claim of [state secrets] privilege if the court is ultimately satisfied that military secrets are at stake"); Northrop, 751 F.2d at 399 (privilege "cannot be compromised by *any* showing of need on the part of the party seeking the information") (emphasis supplied).    Once the state secrets privilege is invoked, "the role of the court is a limited one," Tilden v. Tenet, 140 F. Supp.2d 623, 626 (E.D. Va. 2000), and "courts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military

or diplomatic secrets." Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir.1978).    In evaluating an

assertion of the state secrets privilege, the sole determination for the court is whether, "from all

the circumstances of the case, [ ] there is a reasonable danger that compulsion of the evidence

will expose military matters which, in the interest of national security, should not be divulged."

Reynolds, 345 U.S. at 10, 73 S.Ct. at 533.    See also Northrop, 751 F.2d at 402.

The military and state secrets privilege is invoked by the government by making "[1] a

formal claim of privilege, [2] lodged by the head of the department which has control over the

matter, after [3] actual personal consideration by that officer." Reynolds, 345 U.S. at 7-8, 73

S.Ct. at 532 (footnotes omitted).    The assertion of the privilege is a policy decision made at the

highest level of the department involved that disclosure of the information at issue would be

harmful to national security.    Halkin v. Helms, 690 F.2d 977, 996 (D.C. Cir. 1982) ("Halkin II").

## 2. The Government Has Properly Invoked the Privilege, and it Should be Recognized by the Court.

The government has properly invoked the state secrets privilege as to information relating

the work Sibel Edmond performed under her contract with the FBI.    The unclassified version of

the Attorney General's declaration has been attached to this motion as Exhibit 5.    Both the

classified version of the Attorney General's declaration and the classified Gebhardt Declaration

on which the Attorney General relies are available for the Court's in camera ex parte review.    The

assertion of the privilege meets all three of the prerequisites described in Reynolds, 345 U.S. at

7-8, 73 S.Ct. at 532.    First, the Attorney General has formally asserted the privilege in his

declaration. Ashcroft Decl., ¶ 6.    Second, the Attorney General is the highest-ranking official in

the Department of Justice.    Id., ¶ 1.    Third, the Attorney General has personally considered the

matter. Id., ¶¶ 2, 5. After this personal consideration, the Attorney General has determined that

disclosure of the information at issue would pose a grave risk to the national security. Id., ¶ 5.

The Attorney General's classified declaration describes in detail the information subject to his

claim of privilege, and explains how disclosure of the information at issue would harm the

national security of the United States. Accordingly, the assertion of the state secrets privilege

should be recognized by this Court. As a result, Ms. Edmonds' deposition should not go forward,

as she will be unable to testify on the proposed topics without disclosing information covered by

that privilege.

> **3.    The Information Withheld in Ms. Edmonds' FOIA Case Illustrates
> the Broad Categories of Material that Cannot Be Disclosed as a Result
> of the State Secrets Privilege.**

Consistent with the assertion of the state secrets privilege in Ms. Edmonds' employment

case, the FBI classified and withheld certain information under Exemption 1 in Ms. Edmonds'

FOIA case. All of those withholdings were upheld by Judge Huvelle. The categories of

information deemed properly classified and withheld under Exemption 1 in the FOIA case

illustrate the broad nature of the information covered under the state secrets privilege, and

demonstrate why Ms. Edmonds cannot testify at all with respect to any information that she

learned during the time that she worked at the FBI. Further details of the categories of

information withheld under Exemption 1 cannot be disclosed here, but they are set forth in detail

in the Classified Supplemental Declaration of David M. Hardy, filed in Ms. Edmonds' FOIA

case.

In addressing the broad nature of the FBI's Exemption 1 withholdings, Judge Huvelle

recognized:

some information required classification because it was intertwined with the sensitive matters at the heart of the case and could not be further segregated and . . . other categories of information were withheld because, in view of the information relevant to this matter that is already in the public arena, they would tend to reveal matters of national security even though the sensitivity of the information may not be readily apparent in isolation. This explanation comports with the Supreme Court's recognition that "[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context. CIA v. Sims, 471 U.S. 159, 178, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985) (citations omitted). See also Ctr. for Nat'l Security Studies, 331 F.3d at 924 (discussing mosaic arguments in context of national security).

Edmonds v. FBI, 272 F. Supp. 2d at 47. Judge Huvelle further noted that Mr. Hardy's classified

declaration:

satisfactorily explains why it is now proper to classify many work-related documents pertaining to plaintiff's employment (e.g., plaintiff's invoices for contract services as a linguist, her personnel file, letters and e-mails written by FBI agents praising her work performance, and documents concerning her whistleblower allegations), which may not have been classified when plaintiff was employed at the FBI, but must now be treated as classified given the public disclosures surrounding plaintiff's allegations. For, as recognized by this Circuit, information can be classified if, when aggregated and discussed in the context of the responsive documents, it reveals other underlying facts, associations, or relationships that are classified. See Halperin, 629 F.2d at 150 ("each individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"). See also Goldberg v. Dep't of State, 818 F.2d 71, 77, 81 (D.C. Cir. 1987) (classification and withholding of documents initially marked "unclassified" is proper).

Id. at 47-48.

Judge Huvelle's opinion makes clear that even information that "may seem trivial" to the

untrained eye is properly classified and covered by the state secrets privilege here. And

information that would not ordinarily be classified is now subject to the state secrets privilege,

making it impossible to delineate acceptable contours for any testimony that Ms. Edmonds may

give, and explain to her the difference between what might be privileged and what would not.

See Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983) ("In many cases, the very fact

that a known datum appears in a certain context or with a certain frequency may itself be

information that the government is entitled to withhold. For example, even if the CIA at one

time acknowledged the existence of an intelligence relationship with SAVAK, which is

information that fits into one of the categories of information withheld in this lawsuit, the release

of a series of telegrams and cables recording particular contacts in the relationship might well

provide new information regarding the extent and nature of the liaison. This too may be

information that the agency may safeguard."). Should Ms. Edmonds be deposed, privileged

information would surely be disclosed if she were allowed to testify on the topics set forth in

Attachment A of the subpoena. As a result, Ms. Edmonds' deposition cannot proceed.

**B.      Ms. Edmonds Should Not be Permitted to Testify.**

Plaintiffs seek information from Ms. Edmonds in a number of categories, information

directly obtained as a result of Ms. Edmonds' work with the FBI, and pertaining to: 1) statements

that she made in unclassified meetings with Senate staff and members of the 9/11 Commission;

2) statements that she made to the press; 3) statements that she made in a February 16, 2004 letter

to Senator Charles Grassley. While at first glance such topics may appear innocuous, it is clear

that each of the categories of information sought by plaintiffs in this case will require a

discussion and description of the nature of Ms. Edmonds' duties with the FBI, information that is

protected by the state secrets privilege and that has been classified by the FBI.

The fact that Ms. Edmonds may have previously disclosed some information relating to

her work with the FBI does not generally remove the information that she may have learned

through those duties from the agency's rightful control.[5]  For example, courts have repeatedly

emphasized the "critical difference between official and unofficial disclosures," Fitzgibbon v.

CIA, 911 F.2d 755, 765 (D.C. Cir. 1990), and have stated that no disclosure of information will

be deemed "official" for purposes of arguing that it has been publicly disclosed where the

disclosure is made by "someone other than the agency," Frugone v. CIA, 169 F.3d 772, 774

(D.C. Cir. 1999).  Applying this principle, the courts have soundly rejected arguments that

information has been officially publicly disclosed because of its release in press reports.  See

Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362, 1370 (4th Cir. 1975) (unofficial revelations

and/or speculation in the press does not constitute official disclosure); Military Audit Project v.

Casey, 656 F.2d 724, 743 (D.C. Cir. 1981) (same).[6]  Information unofficially disclosed – and

---

[5] Aside from notice of Ms. Edmonds' deposition and her appearance on "60 Minutes," to which the FBI responded with the letter attached as Exhibit 6, the United States has not received prior notice of a statement or appearance by Ms. Edmonds to the press or otherwise, concerning the information that she learned during the course of her duties with the FBI.

[6] Nor can disclosure by Congress be considered official public disclosure by the Agency. For example, in Earth Pledge Foundation v. CIA, 988 F. Supp. 623, 625 (S.D.N.Y. 1996), the court concluded that a reference in a Congressional report to diplomatic cables exchanged between "CIA headquarters in Washington, DC and a CIA station in the capital city of the Dominican Republic" did not require the CIA to acknowledge or confirm the same information where the Agency explained in its ex parte, in camera declarations that harm would result "should [the station] in fact exist."  The court deferred to the CIA's determination that release of the information by the Agency could disrupt foreign relations and that "public disclosure would destroy the future usefulness of this station, should it in fact exist."  Id. at 628; see also Fitzgibbon, 911 F.2d at 765-66 (CIA could refuse to disclose classified information pertaining to alleged existence of CIA installation even if previously reported in congressional committee report); Salisbury v. United States, 690 F.2d 966, 971 (D.C. Cir. 1982) ("[B]are discussions by this court and the Congress of NSA's methods generally cannot be equated with disclosure by the agency itself of its methods of information gathering.").  Also, books written by former CIA officials in their personal capacities are not official and documented disclosures by the Agency for purposes of determining whether information has been publicly disclosed by the government. Afshar, 702 F.2d at 1133; Phillippi v. CIA, 655 F.2d 1325, 1330-31 (D.C. Cir. 1981).

even published – therefore remains within the purview of the agency, and an unauthorized or unofficial disclosure does not mean that the agency loses control over that information. And just because Ms. Edmonds has spoken before without permission from the FBI, does not mean that what she has said is true, or that she should be permitted to disclose the agency's information without authorization.[7] Nor does a subpoena confer that authorization.[8]

Moreover, even though certain information may have been unofficially disclosed at one time, further protection may still be warranted, both over that information, and over other undisclosed information covered by the privilege. See Edmonds v. FBI, 272 F. Supp. 2d at 49 ("[I]t is not 'disingenuous,' as argued by plaintiff . . ., for the defendant to classify information that is arguably in the public domain. At least in the area of national security, it is accepted that an agency can determine the disclosure of information already in the public realm 'reasonably could be expected to cause damage to the national security . . .'") (citations omitted). Indeed, even information disclosed from an official source may require further protection. Limited or inadvertent disclosures by an agency are not deemed to be official public disclosures of information that is otherwise properly classified. For example, in Students Against Genocide v. Dep't of State, 50 F. Supp.2d 20 (D.D.C. 1999), plaintiffs argued that the State Department could not protect a document that the State Department determined would "tend to reveal classified

---

[7] Nor, if she were permitted to testify, would her testimony be transformed into any kind of "official" disclosure. Ms. Edmonds is simply not authorized to speak for the government on any matters pertaining to her work as a contract linguist with the FBI.

[8] Further, because the taking of a deposition is fundamentally different from an interview with the press or otherwise, and carries with it much greater weight and indicia of reliability – including, for example, subjecting the deponent to criminal perjury charges if she does not tell the truth, 18 U.S.C. § 1621 – if Ms. Edmonds' deposition were permitted to go forward, it could be construed by others as though her testimony was authorized, even though it would not be.

-14-

sources and methods" because the information was previously shared by U.N. Representative

Madeline Albright with representatives of other nations at a meeting of the U.N. Security

Council. The court found that such limited disclosure did not place the information in the public

domain, and that plaintiffs "cannot simply substitute their judgment for the United States

government's judgment that additional disclosure would be harmful." Id. at 24; see also Van

Atta v. Defense Intelligence Agency, No. Civ. A 87-1508, 1988 WL 73856, at *2 (D.D.C. July 6,

1988) ("The government's decision to share information with a foreign power does not open that

information to public scrutiny or undermine the reasons for nondisclosure."). Even information

that has been inadvertently disclosed by the government itself can be protected where the

government demonstrates in its declarations that further release would jeopardize national

security. See Carlisle Tire & Rubber Co v. U.S. Customs Serv., 663 F.2d 210, 219 (D.C. Cir.

1980) (deferring to determination in affidavits of U.S. Customs Service that "serious adverse

consequences" would result from further release of document subject to "inadvertent and limited

disclosure" in reading room of Customs Service). This principle must apply a fortiori to an

unofficial, unauthorized release of information – just because information has been unofficially

released does not mean that further release cannot be protected.

In fact, Ms. Edmonds' ability to offer testimony has been complicated by information that

she herself has publicly disclosed. Since the termination of her contract with the FBI, Ms.

Edmonds has been talking to members of Congress, the press, and the 9/11 Commission about

the details of her allegations. Because of the amount and content of information that Ms.

Edmonds has already revealed, it becomes all the more important to safeguard additional facts

that may appear innocuous on their face, and that may not have been necessary to classify at one

-15-

time, but when put together would reveal classified information. And just because Ms. Edmonds may not believe that certain information should be classified, her judgment cannot trump the agency's determination to classify information in this case. Halperin v. National Security Council, 452 F. Supp. 47 (D.D.C. 1978), aff'd, 612 F.2d 586 (D.C. Cir. 1980) (rejecting offer of plaintiff national security expert to review documents classified by agency and offer own opinion on danger to foreign policy and national defense). Further details of the classified information and the mosaic in this case cannot be discussed on the public record, and the Court is respectfully referred to the classified Declaration of John Ashcroft, and the Classified Supplemental Declaration of David M. Hardy, ¶¶ 19-30.

Thus, because any information sought from Ms. Edmonds in the deposition in this case would unavoidably touch upon the classified nature of her duties with the FBI, information covered by the state secrets privilege, this Court should quash the subpoena for Ms. Edmonds' deposition, or issue a protective order staying the deposition pending consideration of appeal.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD ENTER A PROTECTIVE ORDER STAYING THE DEPOSITION.

If this Court determines for any reason that it requires more information in order to enter the requested relief (or more time to consider the request), the United States respectfully requests that the Court enter a protective order staying the deposition in order to give the United States the opportunity to address the Court's concerns. As set forth above, and in the Classified Declarations of the Attorney General and David M. Hardy, the disclosure, or risk of inadvertent disclosure, of the information over which the state secrets privilege has been asserted would cause serious damage to the national security and foreign policy interests of the United States.

The protection of national security is simply too important to permit this deposition to go forward without allowing sufficient opportunity for the Government to act to safeguard information vital to the interests of the United States.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its motion to quash the subpoena, or enter a protective order staying the deposition pending consideration of appeal, or staying the deposition until the Court has had sufficient opportunity to fully consider the matter.

Dated: April 23, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

ROSCOE C. HOWARD, JR.
United States Attorney

SUSAN K. RUDY
VESPER MEI, D.C. Bar #455778
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
(202) 514-3367 (telephone)
(202) 616-8470 (fax)

Counsel for Defendants

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2004, copies of the foregoing Emergency Motion

To Quash Deposition of Sibel Edmonds, or for Protective Order were served by federal express

and email on:

Robert T. Haefele, Esq.
Motley Rice LLC
28 Bridgeside Blvd
Mt. Pleasant, SC 29465
MDL1570@motleyrice.com

Mark Zaid, Esq.
Krieger & Zaid, PLLC
1747 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
ZaidMS@aol.com

And by federal express on:

Ronald L. Motley, Esquire
Jodi Westbrook Flowers, Esquire
Donald A. Migliori, Esquire
Jeffrey S. Thompson, Esquire
William Narwold, Esquire
Michael E. Elsner, Esquire
Ingrid Moll, Esquire
Justin Kaplan, Esquire
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

Martin F. McMahon, Esquire
Christopher Smith, Esquire
**MARTIN F. McMAHON & ASSOCIATES**
1150 Connecticut Avenue, N.W., Suite 900
Washington, DC 20036

Harry Huge, Esquire
**HARRY HUGE LAW FIRM, LLP**
401 Ninth Street, N.W., Suite 450
Market Square North
Washington, DC 20004

Roger C. Simmons, Esquire
Victor E. Cretella, III, Esquire
**GORDON & SIMMONS, LLC**
131 West Patrick Street
P.O. Box 430
Frederick, MD 21705-0430

Andrea Bierstein, Esquire
**HANLY CONROY BIERSTEIN &**
**SHERIDAN LLP**
415 Madison Avenue
New York, NY 10017

Lynne A. Bernabei, Esquire
Alan R. Kabat, Esquire
**BERNABEI & KATZ, PLLC**
1773 T Street, N.W.
Washington, DC 20009-7139

Allan Gerson, Esquire
4221 Lenore Lane, N.W.
Washington, DC 20008

Christopher M. Curran, Esquire
Nicole E. Erb, Esquire
**WHITE & CASE, LLP**
601 13th Street, N.W.
Washington, DC 20005-3807

Jack D. Cordray, Esquire
**CORDRAY LAW FIRM**
40 Calhoun Street, Suite 420
Post Office Drawer 22857
Charleston, SC 29413-2857

-2-

Nancy Luque, Esquire
Donna Sheinbach, Esquire
**GRAY CARY WARE & FREIDENRICH LLP**
1625 Massachusetts Avenue, N.W., Suite 300
Washington, DC 20036

Clare M. Sproule, Esquire
**EPSTEIN BECKER & GREEN, P.C.**
250 Park Avenue
New York, NY 10177-1211

Deborah S. Burstein, Esquire
Richard T. Marooney, Esquire
Jeannette M. Viggiano, Esquire
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036

Kenneth N. Sacks, Esquire
**SACKS & SACKS LLP**
150 Broadway
New York, NY 10038

Michael Nussbaum, Esquire
**BONNER, KIERNAN, TREBACH AND CROCIATA**
1250 Eye Street, N.W.
Washington, DC 20005

Gary O. Galiher, Esquire
**GALIHER, DeROBERTIS, NAKAMURA, ONO & TAKITANI**
610 Ward Avenue, Suite 200
Honolulu, HI 96814

Michael Hadeed, Jr., Esquire
**BECKER, HADEED, KELLOGG & BERRY**
5501 Backlick Road, Suite 220
Springfield, VA 22151

Robert Conason, Esquire
Howard Hershenhorn, Esquire
**GAIR, GAIR, CONASON, STEIGMAN &
MACKAUF**
80 Pine Street
New York, NY 10005

Casey Cooper, Esquire
William H. Jeffress, Jr., Esquire
Jamie Kilberg, Esquire
Sara Kropf, Esquire
**BAKER BOTTS LLP**
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400

Vincent F. Pitta, Esquire
**PRYOR CASHMAN SHERMAN & FLYNN
LLP**
410 Park Avenue, 10th Floor
New York, New York 10022

David P. Donovan, Esquire
**WILMER CUTLER PICKERING LLP**
1600 Tysons Boulevard, 10th Floor
McLean, VA 22102

Michael N. Block, Esquire
Edward Marcowitz, Esquire
Andrew Carboy, Esquire
**SULLIVAN, PAPAIN, BLOCK, McGRATH &
CANNAVO, P.C.**
120 Broadway Avenue, 18th Floor
New York, NY 10271

Louis R. Cohen, Esquire
Shirley Woodward, Esquire
**WILMER CUTLER PICKERING LLP**
2445 M Street, N.W.
Washington, DC 20037

Anthony M. Sellitto, Jr., Esquire
**OLIVER & SELLITTO**
205 Bond Street
Asbury Park, NJ 07712

Matthew Previn, Esquire
**WILMER CUTLER PICKERING LLP**
399 Park Avenue
New York, NY 10022

Samuel L. Davis, Esquire
**DAVIS, SAPERSTEIN & SALOMON, P.C.**
375 Cedar Lane
Teaneck, NJ 07666

Wilmer Parker, III, Esquire
**GILLEN PARKER & WITHERS LLC**
One Securities Centre, Suite 1050
3490 Piedmont Road, NE
Atlanta, GA 30305-1743

Guy Molinari, Esquire
John D'Amato, Esquire
**RUSSO, SCAMARDELLA & D'AMATO, P.C.**
1010 Forest Avenue
Staten Island, NY 10310

David C. Frederick, Esquire
Michael J. Guzman, Esquire
Mark C. Hansen, Esquire
Michael K. Kellogg, Esquire
J.C. Rozendaal, Esquire
**KELLOGG, HUBER, HANSEN, TODD & EVANS, P.L.L.C.**
1615 M Street, N.W., Suite 400
Sumner Square
Washington, DC 20036-3209

Sanford A. Rubenstein, Esquire
**RUBENSTEIN & RYNECKI**
16 Court Street, Suite 1717
Brooklyn, NY 11241

-5-

Matthew H. Kirtland, Esquire
**FULBRIGHT & JAWORSKI, LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004

Edward D. Robertson, Esquire
Mary Winter, Esquire
**BARTIMUS, FRICKLETON, ROBERTSON &
OBETZ**
200 Madison Avenue, Suite 1000
Jefferson City, MO 65101

Stanton D. Anderson, Esquire
Thomas P. Steindler, Esquire
**McDERMOTT, WILL & EMERY**
600 13th Street, N.W.
Washington, DC 20005-3096

Amy Ficklin DeBrota, Esquire
William Riley, Esquire
**YOUNG RILEY DUDLEY & DeBROTA LLP**
3815 River Crossing Parkway, Suite 340
Indianapolis, IN 46240

Stephen J. Brogan, Esquire
Timothy J. Finn, Esquire
James E. Gauch, Esquire
Michael P. Gurdak, Esquire
Jonathan C. Rose, Esquire
Michael Shumaker, Esquire
Jennifer Shumaker, Esquire
Melissa Stear, Esquire
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001

Robert D. Brain, Esquire
Don Howarth, Esquire
Suzelle M. Smith, Esquire
**HOWARTH & SMITH**
800 Wilshire Boulevard, Suite 750
Los Angeles, CA 90017

E. Michael Bradley, Esquire
Geoffrey S. Stewart, Esquire
**JONES DAY**
222 East 41st Street
New York, NY 10017-6702

Matthew S. Dontzin, Esquire
David Stone
**THE DONTZIN LAW FIRM**
6 East 81st Street
New York, NY 10028

Ronald S. Liebman, Esquire
Mitchell Berger, Esquire
**PATTON BOGGS LLP**
2550 M Street, N.W.
Washington, DC 20037

Brian H. Polovoy, Esquire
Daniel M. Segal, Esquire
Henry Weisburg, Esquire
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022-6069

Christopher T. Lutz, Esquire
**STEPTOE & JOHNSON L.L.P.**
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Gerald A. Feffer, Esquire
Peter J. Kahn, Esquire
Thomas C. Viles, Esquire
**WILLIAMS & CONNOLLY LLP**
725 12th Street, N.W.
Washington, DC 20005

Joshua L. Dratel, Esquire
Marshall A. Mintz, Esquire
**JOSHUA L. DRATEL, P.C.**
14 Wall Street, 28th Floor
New York, NY 10005

John C. Millian, Esquire
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Brian A. Coleman, Esquire
Michael J. McManus, Esquire
**DRINKLER BIDDLE & REATH LLP**
1500 K Street, N.W., Suite 1100
Washington, DC 20005-1209

James M. Cole, Esquire
James J. Murphy, Esquire
**BRYAN CAVE, LLP**
700 Thirteenth Street N.W.
Washington, DC 20005-3960

_____
VESPER MEI